UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
United States of America

        Plaintiff,

v.

Ezra Chowaiki

        Defendant.

and

**Jeffrey H. Loria & Co., Inc.**

        Third party - Petitioner-Claimant
------------------------------------------------------- x

1:18 - cr 00323 - JSR
[Ancillary Proceeding]

**PETITION - CLAIM OF JEFFREY H. LORIA & CO., INC.
BY AND THROUGH ITS PRINCIPAL JEFFREY H. LORIA**

1. I am the president and sole shareholder of Jeffrey H. Loria & Co., Inc. (hereinafter "Loria & Co."), a New York corporation with offices at 19 East 72nd Street, New York, New York. It is the entity through which I conduct my business of buying and selling fine art. Loria & Co. claims ownership and seeks the return of artworks now held by the United States as enumerated and explained below.

I.
<u>Two Artworks Owned Entirely by Jeffrey H. Loria & Co., Inc.</u>

2. Two artworks listed in the "Amended Consent Preliminary Order of Forfeiture As to Specific Property/Money Judgment" p. 2 and the chart on p. 5 (Exhibit "B" filed herewith,

1

hereinafter "Forfeiture Order"), were and continue to be owned exclusively by Loria & Co.[1]

Specifically, Loria & Co. purchased: (a) on June 22, 2015, the "*Untitled*" gouache and india ink on paper, by Joan Miró (the "Miró") from the defendant's art gallery, Chowaiki & Co. Fine Arts Ltd. (hereinafter the "Chowaiki Gallery"); and b) on October 18, 2016, the *Portrait of Mrs. Chester Dale*, gouache on paper by Fernand Léger from a Paris, France art dealer. *See,* "Exhibit D," filed herewith, pp. 1- 2A, for a full description of these artworks and true copies of documents from Loria & Co. files establishing the above purchases.

3. On May 3, 2017, Chowaiki Gallery picked-up these artworks from Loria & Co. based on the representation made to me by its principal, defendant Ezra Chowaiki, that he had "people for them," meaning in art world parlance, that he had serious potential buyer(s) for the artworks. *See,* "Exhibit D," pp. 3- 4, true copies of documents from Loria & Co. files, specifically, a "Consignment Agreement" and a Loria & Co. internal form recording the agreed-to prices to be paid to Loria & Co. upon the sale of the artworks ($690,000 for the Miró, *Untitled* and $550,00 for the Léger, *Portrait of Mrs. Chester Dale*).

4. In June 2017, assuming that a sale had not been made, I telephoned defendant Chowaiki and asked him to return these artworks to me. He answered that he was still "working on them" meaning, in art world parlance, that he was in the process of attempting to close on a deal for their sale. Failing that, the works were to be returned to Loria & Co.

5. However, neither of these artworks was sold by defendant on behalf of Loria & Co. or returned to Loria & Co. Instead, without my authorization, approval or knowledge, it appears that defendant Chowaiki delivered them to Ely Sakhai, someone completely unknown to me, and

---

[1] I received direct written notice of the Forfeiture Order on June 7, 2018.

never even mentioned to me, as "collateral" for some business activity that to this day I know nothing about. *See*, "Exhibit C," filed herewith, p. 1, from a schedule filed by the Debtor in the Bankruptcy Court proceedings of the Chowaiki Gallery, 17-13228 (MKV) stating that the "STATUS/LOCATION" of both artworks is: "*Collateral - with Ely Sakhai."

6. I was shocked when I learned of this for the first time after the above referred to document included in "Exhibit C" was filed in the Bankruptcy Court. Had defendant Chowaiki told me that he wanted to or intended to use these artworks for any activity other than a direct sale by him to a third party-purchaser, I would have instantly refused permission and demanded that he immediately return the artworks to me. In fact, Loria & Co. exclusively owned and continues to exclusively own these two artworks.

## II
## Two Artworks 50% Owned By Jeffrey H. Loria & Co. Inc.

7. Loria & Co. also owned and continues to own a 50% interest in two other artworks listed in the Forfeiture Order – the Léger, gouaches on paper, *Study for Sao Paolo* I, 1953 and *Study for Sao Paolo* II, 1954 (hereinafter *Sao Paolo I and II*). *See*, "Exhibit B," the Forfeiture Order, p. 2 and "chart" p. 5; and "Exhibit C," p. 2, from a schedule filed by the Debtor in the Bankruptcy Court proceedings of the Chowaiki Gallery, column headed *"STATUS NOTES"* – where *Sao Paolo I and II* are listed by the Debtor as being "½ owned" by the Debtor.

Specifically, on January 27, 2017, Loria & Co., purchased these two artworks, which are of equal value, in one transaction, from a Paris, France art dealer. On May 5, 2017, Loria & Co. sold a ½ interest in these two artworks combined to the Chowaiki Gallery. *See*, "Exhibit E" filed herewith, pp. 1- 4, true copies from Loria & Co. files, of documents proving these purchases and

the subsequent sale of one-half interest to Chowaiki Gallery.[2]

8. On May 15, 2017, Loria & Co. delivered these two Léger artworks to Chowaiki Gallery, with it agreed that defendant could sell each of them for $100,000. *See* "Exhibit D hereto," p. 3, a true copy of a document from Loria & Co. files, evidencing that the artworks were "Received" by the defendant's gallery from Loria & Co. on May 15, 2017.

9. However, neither of these artworks was sold by Chowaiki on behalf of Loria & Co. or returned to Loria & Co. Instead, without my authorization, approval or knowledge, it appears that Ezra Chowaiki delivered them to Ely Sakhai, someone completely unknown to me and never even mentioned to me, as "collateral" for some business activity that to this day I know nothing about. *See*, "Exhibit C," p. 2, the "Schedule of Inventory-Gallery," wherein the "LOCATION" of both artworks is listed as "*currently Collateral: with Ely Sakhai."

10. I was shocked when I learned of this for the first time after the above referred to document included in "Exhibit C" was filed in the Bankruptcy Court. Had defendant Chowaiki told me that he wanted or intended to use these artworks for any activity other than a direct sale by him to a third party-purchaser, I would have instantly refused permission and demanded that he immediately return to me one of the two artworks (*i.e.*, my 50% interest in the two).

11. In summary, except to the extent acknowledged above, Loria & Co. owns all of the four artworks discussed herein free and clear of any and all claims and liens of every kind and character and will oppose any competing claim to the artworks.

---

[2] *Queen of Clubs,* is listed as an "Artwork Received" by the Debtor from Loria & Co, on May 15, 2017 ("Exhibit E" p. 3). That work is also listed in "Exhibit B," p. 2, on the Debtor's "Schedule of Inventory-Gallery," as "Owned, 100%" by the Debtor and as located at the Debtor's "Gallery, 500 Park." Loria & Co. received payment in full for that artwork on May 5, 2017("Exhibit E," pp. 3-4). Accordingly, Loria & Co. does not claim any interest in that work.

## Conclusion

For the foregoing reasons, I respectfully petition the Court to order the United States to return to Loria & Co., three artworks: the "*Untitled*" gouache and india ink on paper, by Joan Miró, the gouache on paper, *Portrait of Mrs. Chester Dale*, by Fernand Léger, and either one of the two gouaches on paper by Fernand Léger – *Sao Paolo* I, 1953 or *Sao Paolo* II, 1954.

I declare under penalty of perjury that the foregoing is true and correct.

This 25 day of June, 2018

_____
Jeffrey H. Loria