Thomas R. Califano
Rachel Ehrlich Albanese
Jessica A. Masella
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel to Dr. João Miguel Gorjão Henriques de Brito*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
United States of America                              :
                                                                      :    18 Cr. 323 (JSR)
            - v. -                                                 :
                                                                      :    VERIFIED PETITION FOR
Ezra Chowaiki,                                              :    ADJUDICATION OF
                                                                      :    INTEREST PURSUANT TO 21
                        Defendant.                        :    U.S.C. § 853(n)
------------------------------------------------------------ X

   Petitioner Dr. João Miguel Gorjão Henriques de Brito ("Dr. de Brito" or "Petitioner") submits this *Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n)* and the accompanying Verification in support thereof, and petitions this Court for an ancillary hearing pursuant to 21 U.S.C. § 853(n)(3) and Federal Rule of Criminal Procedure 32.2(c), and asserts his interest pursuant to 21 U.S.C. § 853(n)(6)(A) as follows:

   1.  Dr. de Brito is the owner of *Tempête*, a 1957 oil-on-canvas painting by important Portuguese artist Maria Helena Vieira da Silva ("*Tempête*").  In 2015, Defendant Ezra Chowaiki ("Chowaiki" or the "Defendant") purported to enter into a consignment arrangement with Dr. de Brito to sell *Tempête*, but in fact, Chowaiki stole *Tempête* from Dr. de Brito and used it as part of his fraudulent scheme.

   2.  On May 16, 2018, this Court entered an *Amended Consent Preliminary Order of Forfeiture as to Specific Property / Money Judgment* (ECF No. 19) (the "Amended Forfeiture

1

Order"). The Amended Forfeiture Order held that all of the "right, title and interest" of the Defendant "in the Specific Property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853." (Amended Forfeiture Order, ¶ 2.)

3. *Tempête* is included among the "Specific Property" forfeited by Chowaiki. (Amended Forfeiture Order, at 1-2.) As set forth below, Dr. de Brito holds property interests in *Tempête* superior to any other party's purported interest.

4. On June 8, 2018, Dr. de Brito received written notice of the Amended Forfeiture Order. *See* **Exhibit A** (written notice to Dr. de Brito). This petition therefore is timely filed pursuant to 21 U.S.C. § 853(n).

5. Because Dr. de Brito's ownership of *Tempête* predates the time when any property interest in *Tempête* vested in the United States, Dr. de Brito held superior title to the Defendant at the time the Defendant acquired possession of *Tempête* by criminal conduct and at all times thereafter.

6. Pursuant to 21 U.S.C. §§ 853(n)(2) and (n)(6)(A), Petitioner Dr. de Brito respectfully requests that the Court adjudicate, recognize, and confirm his superior interest in *Tempête*.

### BASIS FOR DR. DE BRITO'S THIRD PARTY PETITION

**A.     Dr. de Brito's Interest in *Tempête***

7. Upon the August 2006 death of Dr. de Brito's father, Mr. Jorge Artur Rego de Brito ("Mr. Jorge de Brito"), Dr. de Brito became administrator and "head of household" of his father's intestate estate. A copy of Mr. Jorge de Brito's death certificate is attached hereto as

**Exhibit B**,[1] and a copy of the applicable Certificate of Inheritance is attached hereto as **Exhibit C**.[2]  *Tempête* is included as part of the inheritance and incorporated into the list of assets submitted to the Chief Tax Officer at the Cascais 1 Tax Office in Portugal following the death of Mr. Jorge de Brito.  *See* **Exhibit D** (Tax Certificate).  *Tempête* was on display in the main gallery of Museu Arpad Szenes in Lisbon, Portugal from December 6, 2005 until April 9, 2010, when it was "handed over to the heirs of the collector Jorge de Brito," including Dr. de Brito.  *See* **Exhibit E** (Museum Letter of Authenticity Regarding *Tempête*).

8.  *Tempête* was in Dr. de Brito's possession from April 9, 2010 until April 2015. Dr. de Brito maintained sole ownership of *Tempête* during this time as the head of household and administrator of his father's estate.

**B.   Chowaiki Fraudulently Obtained Possession of *Tempête***

9.  In early 2015, Dr. de Brito was introduced to the Defendant as an art dealer in New York who would be able to find a purchaser for *Tempête*.  *See* **Exhibit F** (E-mail correspondence among Dr. de Brito, Chowaiki, and Tiago Feijoo).

10.  On April 27, 2015, the Defendant fraudulently induced Dr. de Brito to consign *Tempête* to Chowaiki & Co. Fine Art Ltd. ("Chowaiki & Co.") until June 15, 2015.  *See* **Exhibit G** (April 27, 2015 Consignment Agreement between Chowaiki & Co. and Dr. de Brito (the "Consignment Agreement")).  The Consignment Agreement provides that *Tempête* was received by Chowaiki & Co. "***on consignment and in trust***" from Dr. de Brito.  *Id.* (emphasis added). The Consignment Agreement states *Tempête*'s value at €600,000 and provides:  "***Title shall not***

---

[1]  Exhibits originally written in Portuguese are accompanied by an official certificate of translation.

[2]  None of Mr. Jorge de Brito's heirs dispute that Dr. de Brito is head of household and administrator of his father's estate and, therefore, properly holds title to *Tempête*.  If necessary, at a later date, Petitioner can provide affidavits from Mr. Jorge de Brito's other heirs, confirming Dr. de Brito's role as head of household and administrator of his father's estate and his uncontested ownership of *Tempête*.

3

***pass until a separate invoice is generated and full payment is rendered.***"[3] *Id.* (emphasis in original). Chowaiki induced Dr. de Brito's entry into the Consignment Agreement by fraudulently misrepresenting that he would find a purchaser for *Tempête*. *See* **Exhibit F** (E-mail correspondence between Dr. de Brito and Chowaiki).

11. Pursuant to the Consignment Agreement, *Tempête* was insured for its full retail value of €600,000 on a "wall to wall" basis by the Defendant as consignee, and in the event of damage or loss to *Tempête*, Dr. de Brito was named as sole loss payee. *See* **Exhibit G**; **Exhibit H** (Certificate of Insurance).

12. The Consignment Agreement further states that *Tempête* "will be returned on or by June 15, 2015 to" Dr. de Brito. *See* **Exhibit G** (Consignment Agreement). Pursuant to his fraudulent scheme, Chowaiki purposefully failed to find a purchaser for *Tempête* before June 15, 2015, but Dr. de Brito extended the initial time frame until a purchaser could be found. *See* **Exhibit F** (E-mail correspondence between the Defendant and Dr. de Brito). Dr. de Brito continued to correspond with Chowaiki following the original expiration of the Consignment Agreement in an effort to locate a purchaser for *Tempête*, but Chowaiki failed to find a buyer despite his repeated false assurances to Dr. de Brito that he was making efforts to do so. *See id.*; *see also* **Exhibit I** (E-mail correspondence among the Defendant, his agents, and Dr. de Brito); **Exhibit J** (E-mail correspondence between the Defendant and Dr. de Brito).

13. Not only did Chowaiki fail to find a buyer for *Tempête*, he also never paid Dr. de Brito for the value of *Tempête* and never returned *Tempête* to Dr. de Brito. Accordingly, Dr. de Brito, in his fiduciary capacity as head of household and administrator of his father's estate, has

---

[3] As of April 10, 2018, the equivalent value in U.S. dollars was $741,114.00. On April 12, 2018, Dr. de Brito filed proofs of claim in *In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV) (Bankr. S.D.N.Y. Apr. 12, 2018) (Claim Nos. 33-1, 34-1), specifically stating Dr. de Brito's ownership interest in *Tempête* and seeking its return and, in the alternative, his secured claim of $741,114.00 in respect of *Tempête*.

4

an ownership interest in *Tempête*, which passed to him and his siblings upon the death of their father in 2006. That ownership interest was superior to the Defendant's before Defendant obtained possession of *Tempête* as part of his fraudulent scheme and at all times thereafter.

## C.  Chowaiki's Fraudulent Scheme Is Exposed

14. On December 12, 2017, the United States filed a three-count complaint in the above-captioned matter against the Defendant, alleging, among other things, that between 2015 and 2017, Chowaiki:

> engaged in a scheme to deceive other dealers and collectors of fine artwork into sending him money or valuable artwork under the false pretenses that [Chowaiki] would engage in a legitimate transaction such as the purchase, sale, or consignment of artwork. In truth, however, [Chowaiki] did not, and often could not, conduct the transactions as promised, and instead kept funds and artwork for himself and [Chowaiki & Co.], or sold them to others both in and outside the United States without authorization.

(ECF No. 1 (the "Criminal Complaint"), at 4.) By way of example, the Criminal Complaint describes one of the methods by which Chowaiki perpetrated his fraudulent scheme. The Criminal Complaint describes "Victim 3," who in August 2015, like Dr. de Brito in April 2015, was caused to consign a painting to Chowaiki under the fraudulent pretense that Chowaiki & Co. would sell Victim 3's painting on Victim 3's behalf. (*Id.* at 5.) As with *Tempête*, Chowaiki made no effort to sell Victim 3's painting and, instead, purportedly conveyed the painting to his associate without paying any of the proceeds to Victim 3 or arranging for a return of the painting to Victim 3. (*Id.* at 5-6.[4])

15. On May 3, 2018, the United States filed a one-count Information charging that Chowaiki committed wire fraud by:

---

[4] The United States was aware of the bankruptcy case of Chowaiki & Co. at the time it filed the Criminal Complaint and noted that approximately $11.8 million was owed to Chowaiki & Co.'s creditors based on information gathered from publicly-filed documents as well as records the United States obtained from the bankruptcy trustee in *In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV) (Bankr. S.D.N.Y.). (*See* Criminal Complaint, at 7.)

>devis[ing] a scheme and artifice to defraud, . . . obtaining money and property by means of false and fraudulent pretenses . . . [and] through the use of e-mail messages, telephone calls, and electronic fund transfers, defrauded purchasers and sellers of fine art by deceiving them into sending funds or artwork to his gallery in New York, New York under the false pretense that Chowaiki would either use the funds to purchase works of art or that he would sell the artworks that had been provided to him.

(ECF No. 14, at 1-2.)

16.     On the same day, Chowaiki pled guilty to wire fraud in violation of 18 U.S.C. § 1343, which is violated when a person, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343; *see also* Amended Forfeiture Order, at 2-3. During Chowaiki's plea hearing on May 3, he admitted that, between 2015 and 2017, he:

> defrauded purchasers and sellers of artwork and had them send funds or artwork to my gallery known as Chowaiki & Company under false pretenses, representing that the funds would be used to purchase artwork for which the funds were not used or that paintings would be held by [Chowaiki & Co.] on consignment for sale, but, in fact, some of the paintings were used by me as collateral for monies that I obtained from others, and this was done without the consent or the permission of the owners of the artwork. . . . I knew that what I was doing was wrong and illegal.

Plea Transcript, *United States v. Chowaiki*, No. 18-CR-00323(JSR), at 14:2-14 (S.D.N.Y. May 3, 2018).[5] Clarifying Defendant's fraud, the Court asked Chowaiki, "they [certain victims] gave you art which they thought they were giving you to be sold, but in fact you were using it as collateral for other purposes, yes?" *Id.* at 14:25-15:2. Chowaiki said "Yes." *Id.* at 15:3. And in response to the Court's question as to whether Chowaiki "knew that when [he was] doing this,

---

[5] A copy of the plea transcript, which became available on May 30, 2018 (*see* ECF Nos. 20, 21), is attached hereto as **Exhibit K**.

6

that this would likely bring harm to the people who you were lying to," Chowaiki said that he did.  *Id.* at 15:4-7.

17.     Also on May 3, 2018, Chowaiki consented to the forfeiture of *Tempête*, among dozens of other works of art, as "proceeds [or property derived from proceeds] traceable to the commission of the offense charged in Count One [the wire fraud count to which Chowaiki pled guilty]."  Amended Forfeiture Order, at 2-3.  The Amended Forfeiture Order further provides that "[a]s a result of the offense charged in Count One of the Information, to which the defendant pled guilty, all of the defendant's right, title and interest in the Specific Property [including *Tempête*] is hereby forfeited to the United States for disposition in accordance with the law . . . ." *Id.* at 4.  Therefore, in accordance with the law, and by operation of the relation-back doctrine, any property interest that the Defendant ever held—to the extent any such interest exists[6]— immediately vested in the United States on April 27, 2015 when Dr. de Brito entered into the Consignment Agreement and transferred possession of *Tempête* to Chowaiki & Co.[7]

### D.     **Current Status of *Tempête***

18.     Upon information and belief, *Tempête* is now in the possession of the United States Federal Bureau of Investigation, after it was seized from Jane Holzer pursuant to a seizure warrant.  *See* **Exhibit L** (Schedule 77, Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, *In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV) (Bankr. S.D.N.Y. Nov. 27, 2017) (ECF No. 7) (noting Dr. de Brito as Consignor of *Tempête*; location with Jane Holzer/Hitana)).  Upon information and belief, Chowaiki pledged *Tempête* to

---

[6] Chowaiki never held any property interest in *Tempête*; rather, Chowaiki held *Tempête* in trust under the Consignment Agreement while Dr. de Brito maintained title.  *See* **Exhibit G.**

[7] *See Caplin & Drysdale v. United States*, 491 U.S. 617, 627, 109 S. Ct. 2646, 105 L. Ed.2d 528 (1989) ("[Section] 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture.").

Ms. Holzer as "collateral" for a loan. *See id.*; Proof of Claim, *In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV) (Bankr. S.D.N.Y. Apr. 17, 2018) (Claim No. 2-2).[8] Dr. de Brito never authorized Chowaiki to give *Tempête* to Ms. Holzer or anyone else as collateral or otherwise. To the contrary, Chowaiki represented to Dr. de Brito—and Dr. de Brito believed—that Defendant was continuing his efforts to sell the painting. *See* **Exhibits F, I, J** (correspondence between the Defendant and Dr. de Brito and among the Defendant, his agents, and Dr. de Brito).

19. Upon information and belief, and as set forth above, Chowaiki purportedly conveyed a security interest in *Tempête* to Ms. Holzer at some point between April 2017 and late 2017, when Chowaiki's fraudulent scheme was uncovered and Chowaiki & Co. filed a bankruptcy petition.[9] However, Petitioner's ownership interest in *Tempête* is superior to Ms. Holzer's or any other third party's purported interest in *Tempête*, including the bankruptcy trustee for the estate of Chowaiki & Co.

20. In light of the foregoing, only Dr. de Brito may assert a property interest in *Tempête* that warrants amendment of the Amended Forfeiture Order.

21. Dr. de Brito asserts his interest in *Tempête* pursuant to 21 U.S.C. § 853(n) with a full reservation of rights, including the right to amend and/or supplement this petition in all respects, and the right to respond to and challenge any other party that purports to assert an interest in *Tempête*.

---

[8] Ms. Holzer initially filed a claim based on money loaned to Chowaiki on January 10, 2018. *See* Proof of Claim, *In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV) (Bankr. S.D.N.Y. Jan. 10, 2018) (Claim No. 2-1). Ms. Holzer amended her Proof of Claim on April 17, 2018 for reasons unrelated to *Tempête*.

[9] The only proffered evidence of Ms. Holzer's purported claim to *Tempête* is a defective UCC Financing Statement, dated September 21, 2017. *See* Proofs of Claim, *In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV) (Bankr. S.D.N.Y. Apr. 17, 2018) (Claim Nos. 2-1, 2-2).

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court:

(1) hold a hearing to adjudicate, recognize, and confirm Petitioner's superior interest in *Tempête*, at which time Petitioner may testify and present evidence and witnesses on his own behalf and cross-examine any other witnesses, pursuant to 21 U.S.C. § 853(n)(5);

(2) issue an order amending the Amended Forfeiture Order to recognize and grant Petitioner's interest in *Tempête*, which interest is superior to Defendant's interest and therefore exempt from forfeiture, and deny any other third party petitions asserting purported interests in *Tempête*; and

(3) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 3, 2018

**DLA PIPER LLP (US)**

*/s/ Jessica A. Masella*
Thomas R. Califano
Rachel Ehrlich Albanese
Jessica A. Masella
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel to Dr. João Miguel Gorjão Henriques de Brito*

9

<u>VERIFICATION</u>

As the owner and title-holder of Tempête, I hereby verify that I have read the foregoing Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct, and that all Exhibits attached thereto are true and correct copies of the documents that they purport to be, respectively, to the best of my knowledge, information, and belief.

Dated: July 1, 2018

_____
Dr. João Miguel Gorjão Henriques de Brito